IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TRAVIS CELLA, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MOBICHORD, INC., a Delaware corporation, and HERBERT UHL, an individual,<br><br>Defendants. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 2:17-cv-527-TC |

This cases arises out of an employment dispute between Plaintiff Travis Cella and his former employer Defendant MobiChord, Inc. Currently Mr. Cella is seeking permission to amend his complaint to add a claim for breach of the implied covenant of good faith and fair dealing against MobiChord. For the reasons set forth below, the court GRANTS IN PART AND DENIES IN PART Mr. Cella's Motion to Amend (ECF No. 47).

**PROCEDURAL BACKGROUND**

In January 2016, MobiChord hired Mr. Cella as an at-will employee to procure government contracts for the company. In Mr. Cella's employment contract, MobiChord agreed to pay him a base salary and commissions. It also offered a stock option. On December 31, 2016, when he was in the midst of finalizing several large government contracts and was one month away from vesting in a portion of MobiChord's stock options, MobiChord fired him. He

1

brought this action seeking payment of commissions and the stock option contending, among other things, that MobiChord terminated his employment to avoid its financial obligations to him.

In January 2020, the court, in response to the Defendants' earlier motion to dismiss, dismissed without prejudice Mr. Cella's original claim for breach of the implied covenant of good faith and fair dealing. The court gave him thirty days to file a motion to amend the complaint to restate that cause of action in light of Vander Veur v. Groove Entertainment Technologies, 452 P.3d 1173 (Utah 2019), which the Utah Supreme Court issued after the parties had briefed the motion to dismiss. (See Jan. 27, 2020 Order & Mem. Decision at 27, ECF No. 43.) Mr. Cella timely filed his motion for leave to file a Third Amended Complaint.

Based on this court's dismissal order, Mr. Cella proposes a modified claim against MobiChord for breach of the implied covenant. MobiChord opposes the motion, arguing the claim would be futile under Utah law, citing in particular the Vander Veur decision. Mr. Cella contends that Vander Veur does not foreclose his claim and that other Utah case law, as well as this court's January 2020 order, supports it.

As explained below, the court finds that the portion of Mr. Cella's claim seeking payment of the stock option would be futile. His claim for commissions, however, would not.

## **APPLICABLE STANDARD**

The standard for granting permission to amend a complaint is lenient. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "The purpose of [Rule 15] is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" Minter v. Prime Equip. Co., 451 F.3d 1196, 1204

(10th Cir. 2006) (quoting Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 456 (10th Cir. 1982)).

But denying leave to amend is justified if the amendment would be futile. Berneike v. CitiMortgage, Inc., 708 F.3d 1141, 1151 (10th Cir. 2013); Castleglen, Inc. v. Resolution Trust Corp., 984 F.2d 1571, 1585 (10th Cir. 1993) (citing Foman v. Davis, 371 U.S. 178, 182 (1962); Childers v. Indep. Sch. Dist. No. 1 of Bryan Cty., 676 F.2d 1338, 1343 (10th Cir.1982)). To determine whether Mr. Cella's proposed claim for breach of the implied covenant is futile, the court must apply the standard governing motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Anderson v. Suiters, 499 F.3d 1228, 1238 (10th Cir. 2007).

Under that standard, the court accepts all well-pleaded factual allegations in the proposed Third Amended Complaint as true and construes them in a light most favorable to Mr. Cella. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). In addition, the court will consider the terms of the employment agreement, which is central to Mr. Cella's claim. See Toone v. Wells Fargo Bank, N.A., 716 F.3d 516, 521 (10th Cir. 2013) (taking all well-pleaded allegations as true with the caveat that a court is "permitted to review 'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'") (quoting Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010)). Upon reviewing the allegations and the content of the Agreement, the court must determine whether Mr. Cella's proposed amendment "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If Mr. Cella's allegations, along with the terms of the contract, state a claim that would survive a motion to dismiss, the court must allow the amendment.

**FACTUAL BACKGROUND[1]**

Mr. Cella worked for many years for government contractors and, as a result, developed extensive expertise in the government contract procurement process. In 2016, Defendant Herbert Uhl recruited Mr. Cella to work for MobiChord, and on January 16, 2016, Mr. Cella entered into an employment agreement (Agreement) with MobiChord.

The Agreement expressly stated that Mr. Cella's employment relationship with MobiChord was "at will": "[E]ither you [Mr. Cella] or the Company may terminate your employment at any time and for any reason, with or without cause." (Agreement at p. 2 § 4, incorporated into Proposed 3d Am. Compl. at ¶ 29, ECF No. 47-1, and attached as Ex. A to Pl.'s Reply Supp. Mot. Leave to Amend, ECF No. 56, at pp. 11–13.) The Agreement also set forth the specifics of his compensation in the "Compensation and Employee Benefits" section. (Id. at p. 1.)

In that section, the parties agreed that Mr. Cella would receive a base salary and commissions for his work:

> You will be paid a guaranteed base salary of $120,000 per year paid in twenty-four bi-weekly rates of $5,000, payable on the Company's regular payroll.
>
> Your commission is $120,000 per year, if you reach the yearly target. Your on target earning (OTE) is $240,000 (base salary plus commission). The yearly target and the commission base and calculation will be defined yearly.

(Id. at p. 1 § 2.) The Agreement described how commissions would be calculated.

> The calculation of your commission in 2016 is based on the subscription invoices of MobiChord in America. Your 2016 target for subscription invoice is $2,000,000 ($1,630,000 direct and 370,000 indirect). For eligible invoices you will receive a commission of 7% of your direct new customer and 3% of your indirect (managed by your sales team or from existing customer). For invoices after you reached your target of $2,000,000 you receive an additional commission

---

[1] The facts are taken from Mr. Cella's proposed Third Amended Complaint and the employment contract at issue.

of 2%.  The compensation will be paid in the month following the payment of the customer.

(Id.)

In addition to his regular compensation of salary and commissions, MobiChord offered Mr. Cella stock options beginning one year after he became a MobiChord employee.  The options were to vest according to a specific schedule in the Agreement:

> You are eligible to participate on [*sic*] the new Company's Option program 2016 with an option amount of 1% of the shares of the cooperation with a vesting period of four years.  25% of the option will vest after the first year and the remaining 75% of the option will vest 1/48 per month after the initial 25% are vested.  The strike price of the shares are [*sic*] based on the company valuation as of 12/31/2015.

(Id.)  The initial portion of the option was to vest on February 1, 2017, the first anniversary of his employment.

On December 31, 2016, one month shy of his first anniversary, Mr. Uhl terminated Mr. Cella without explanation.  Mr. Cella had received no indication that Mr. Uhl or anyone else was unhappy with his performance.  Mr. Uhl approached Mr. Cella without warning, asked him to complete paperwork needed to finalize several sales contracts Mr. Cella had negotiated, gave Mr. Cella a check for commissions owed on recently closed contracts, and fired Mr. Cella.

At the time he was fired, Mr. Cella was one month away from receiving the first quarter of his option, which he estimates was worth $750,000.  He had also originated and substantially complete several valuable contracts.  Although the contracts had not officially closed when he was fired, he alleges that he had completed all the steps necessary to bring in the contracts and so had earned those commissions.  He estimates the commissions exceed $1 million.

According to Mr. Cella, MobiChord terminated his employment at that time in order to avoid paying the valuable option and to benefit from the large number of contracts Mr. Cella

5

brought in without paying Mr. Cella the substantial commissions he earned.  This, he maintains, violated the implied covenant of good faith and fair dealing inherent in the Agreement.

In support of his claim, he cites to industry custom in the area of government contracting. According to Mr. Cella, industry custom "dictates that an employee would be paid commissions on contracts in the late stages of negotiation and for which all of the substantive work is complete ('Late Stage Contracts'), even in the event that the employee is terminated prior to the official closing of the contract."  (Proposed 3d Am. Compl. ¶ 94, attached as Ex. A to Pl.'s Mot. Am., ECF No. 47.)  He further alleges that "[i]t would be highly irregular to not pay an employee commissions on Late Stage Contracts in the event the employee was no longer employed at the time of the official closing of the contract."  (Id. ¶ 95.)  Similarly, he cites to industry custom to support his claim that he is entitled to 25% of the stock option that would have vested if MobiChord had not fired him.  "As with the Late Stage Contracts, industry custom in the government contracting arena is not to terminate an employee without cause within 30 days of that employee's vesting period."  (Id. ¶ 98.)  Overall, he says, based on "this well-established industry custom, the parties understood" that Mr. Cella was entitled to commissions on those substantially-completed sales and the one-quarter stock option.  (Id. ¶¶ 96, 100.)

Mr. Cella has added these allegations about industry custom to existing allegations upon which he relied to support his original claim for breach of the covenant.  Mr. Cella asserts that the implied-covenant claim, enhanced by the new allegations, is no longer deficient, and, consequently, the court must grant his request to restate that claim.

## ANALYSIS

The implied covenant of good faith and fair dealing is, as a matter of law, built into the Agreement between Mr. Cell and MobiChord. "The covenant operates by 'inferring as a term of every contract a duty to perform in the good faith manner that the parties surely would have agreed to if they had foreseen and addressed the circumstance giving rise to their dispute.'" Vander Veur v. Groove Entm't Techs., 452 P.3d 1173, 1177 (Utah 2019) (quoting Young Living Essential Oils, LC v. Marin, 266 P.3d 814, 816 (Utah 2011)). The "implied duty" imposed by the covenant "advances the core function of the covenant, as no one would reasonably accede to a contract that left him vulnerable to another's opportunistic interference with the contract's fulfillment." Young Living, 266 P.3d at 817.

When analyzing whether Mr. Cella's allegations state a claim for breach of the covenant, the court is constrained by several "general principles [that] limit the scope of the covenant." Vander Veur, 452 P.3d at 1177 (quoting Oakwood Vill. LLC v. Albertsons, Inc., 104 P.3d 1226, 1240 (Utah 2004)).

> The covenant cannot be read to establish new, independent rights or duties to which the parties did not agree at the outset. It cannot create rights and duties inconsistent with express contractual terms or compel a contractual party to exercise a contractual right to its own detriment for the purpose of benefitting another party to the contract. It cannot be construed to change an indefinite-term, at-will employment contract into a contract that requires an employer to have good cause to justify a discharge. And we will not use this covenant to achieve an outcome in harmony with the court's sense of justice but inconsistent with the express terms of the applicable contract.

Id. at 1177–78 (quoting Oakwood Vill., 104 P.3d at 1240) (internal citations omitted).

To establish his claim to the commissions and the stock option, Mr. Cella relies on "well-established industry norms in the government contracting arena" to establish his claim. Based on these norms, he says he had a justified expectation that he would receive post-termination commissions for "Late Stage Contracts" and that he would not be fired without cause during the

7

period right before his option was to vest. He also contends that his expectations were not inconsistent with the express terms of the Agreement.

MobiChord points to the limiting principles governing the court's analysis of the covenant and argues that the motion should be denied because the express language of the Agreement and MobiChord's right to terminate Mr. Cella for any (or no) reason under the "at-will" provision of the Agreement would be undermined if the court were to apply the covenant here. Relying on the Utah Supreme Court's recent decision in Vander Veur, MobiChord asks the court to deny the proposed amendment as futile.

### 1. Utah Supreme Court Decision in *Vander Veur*

In Vander Veur, the Utah Supreme Court addressed the question of "whether the implied covenant of good faith and fair dealing prohibits an employer from terminating an employee for the purpose of avoiding payment of commissions." Id. at 1179. After considering Mr. Vander Veur's "at-will" status and the compensation agreement through which he earned commissions, the court held that Groove was not prohibited from terminating Mr. Vander Veur without paying post-termination commissions.

Given the similarities of Mr. Cella's case to Mr. Vander Veur's, MobiChord argues that Vander Veur bars Mr. Cella's proposed claim as a matter of law. The court disagrees.

The Vander Veur decision is not completely dispositive of the issue before this court. As discussed below, the facts and contract language at issue in Vander Veur were different, as was the procedural posture of the case, where the court was working with a record developed on summary judgment.

In that case, Mike Vander Veur was hired by Groove Entertainment Technologies as a sales representative to secure new contracts for television services provided by Groove.

8

Although he was an at-will employee, he had a compensation agreement with Groove that expressly provided it would "'remain in effect as long as [Mr. Vander Veur] is employed by Groove.'" Id. at 1176 (quoting compensation agreement). In that contract, Grove agreed to pay Mr. Vander Veur "a commission for each Qualifying Sale deemed commissionable as defined in this Agreement." Id. (quoting compensation agreement). Importantly, the agreement concretely defined "Qualifying Sale" as "'a commissionable sale where the minimum margin requirements are met and the installation is complete.'" Id. (quoting compensation agreement).

Approximately nine months after entering into the compensation agreement, Groove terminated Mr. Vander Veur. According to him, and as stated by the court, at the time he was fired "he had obtained verbal or written commitments for six commissionable sales. None of those six sales had proceeded to installation of the product prior to his termination, but all six installations were completed within three months of his termination." Id. Groove did not pay him commission on those sales.[2]

Mr. Vander Veur asserted that Groove fired him in order to avoid paying commissions on those six sales. Notwithstanding his at-will status, he said, Groove's termination of his employment violated the covenant of good faith and fair dealing underlying his compensation agreement.

When Groove lost on a motion for summary judgment, it appealed Mr. Vander Veur's case to the Utah Supreme Court after the court of appeals held, "as a matter of first impression, that the implied covenant of good faith and fair dealing 'may be employed in limited circumstances to protect an at-will employee's right to receive compensation for work performed

---

[2] Mr. Vander Veur also sought enforcement of what he described as a separate oral contract to split a large bonus that was to be paid by the customer in lieu of Groove's typical fee. The issues relating to that claim are not directly relevant here.

9

pursuant to a compensation agreement attendant to the at-will employment relationship.'" Id. at 1177 (quoting Vander Veur v. Groove Entm't Techs., 436 P.3d 109, 115 (Utah Ct. App. 2018)). Reversing the appellate court, the Utah Supreme Court found on the facts before it that Mr. Vander Veur was not entitled to post-termination commissions for three reasons.

First, the court held that application of the covenant in that situation was impermissible because it would have contradicted express language in the employment agreement. See Oakwood Vill., 104 P.3d at 1240 (the covenant "cannot create rights and duties inconsistent with express contractual terms"). The agreement unequivocally said Mr. Vander Veur would only be entitled to compensation (i.e., commissions) while he remained employed. And the definition of a "Qualifying Sale," which indicated when he was entitled to a commission on a sale, made it clear that he would be paid only for contracts that had been installed. In other words, Mr. Vander Veur "could not … have been entitled to compensation for contracts that proceeded to installation after his termination, because after termination, the compensation agreement was no longer in effect." Vander Veur, 452 P.3d at 1178. The language showed that the parties did foresee, and addressed, the "circumstance that gave rise to their dispute," so the court had "no business injecting its own sense of what amounts to 'fair dealing.'" Id. (quoting Young Living, 266 P.3d at 817).

Second, the record showed that the parties, through their course of dealings and conduct, would not have agreed to payment of post-termination commissions. Under the covenant, when the agreement does not expressly address the situation before the court, evidence of the parties' course of dealings or conduct is relevant to determine whether the parties "undoubtedly would have agreed to the [duty] if they had considered and addressed it." Young Living, 266 P.3d at 817. With the benefit of a record developed on summary judgment, the Vander Veur court was

10

able to say that "Groove's course of dealings demonstrates that it never pays out post-termination commissions." Vander Veur, 452 P.3d at 1179.

Finally, the court found that Mr. Vander Veur could not have had a justified expectation that he would be paid post-termination commissions. The plain text of the agreement foreclosed any such expectation. The agreement said that "commissions are only paid once installation is complete." Id. at 1179. Added to that was language designating him as an at-will employee who could be terminated at any time, with no notice, and without cause. The Vander Veur court determined that, "upon termination, he had a justified expectation only in unpaid commissions for sales that had already been installed." Id.

MobiChord asserts that Vander Veur bars the entirety of Mr. Cella's claim as a matter of law. The court disagrees. Certainly the Vander Veur court rejected an at-will employee's attempt to get post-termination commissions from his former employer, a result that MobiChord urges here. But the similarities end there. As noted below, the language of Mr. Vander Veur's compensation agreement and the record in that case were substantively different than the Agreement and circumstances alleged here. So although the legal principles of Vander Veur govern, their application in this case do not dictate complete dismissal of Mr. Cella's proposed claim. Instead, the court finds, for the reasons discussed below, that application of the Vander Veur holding to the circumstances alleged by Mr. Cella and his Agreement only bar the portion of Mr. Cella's implied-covenant claim seeking payment of the stock option.

## 2. Vesting of the Option

Mr. Cella complains that MobiChord, by terminating his employment without cause a month before a quarter of his option was to vest, violated the covenant. He alleges that "industry custom in the government contracting arena is not to terminate an employee without cause within

30 days of that employee's vesting period" and that such action "raises significant red flags in the industry and violates well-established industry norms." (Proposed 3d Am. Compl. ¶¶ 98-99 (emphasis added).) He then concludes that "[b]ecause of these well-established industry norms, <u>the parties understood</u> that MobiChord employees—including Cella—<u>would not be terminated without cause</u> in the final days <u>before the vesting</u> of any promised options." (<u>Id.</u> ¶ 100 (emphasis added).)

Given the express language of the Agreement, Mr. Cella's claim for the promised option would not survive a motion to dismiss because his alleged expectation based on industry norms is not plausible.

The Agreement states that "[y]our employment with the Company will be 'at will,' meaning that either you or the Company may terminate your employment <u>at any time</u> and for any reason, <u>with or without cause</u>." (Agreement at p. 2 § 4 (emphasis added).) The Agreement also plainly provides that the one-quarter option would not vest until Mr. Cella had worked at MobiChord for a year. (<u>Id.</u> at p. 1 § 2 ("25% of the option will vest after the first year" of employment).)

To enforce a requirement that MobiChord have cause before terminating his employment within thirty days of the vesting date would impermissibly change the Agreement's express "at will" language allowing MobiChord to fire him "at any time" and "without cause." The covenant "cannot create rights and duties inconsistent with express contractual terms or compel a contractual party to exercise a contractual right to its own detriment for the purpose of benefitting another party to the contract." <u>Vander Veur</u>, 452 P.3d at 1177–78.

Mr. Cella's reliance on industry norms to allege a justified expectation does not change the court's conclusion. Even assuming he accurately articulated the industry norms governing

12

vesting of stock options, the parties in this case contracted around those typical industry practices and understandings. A review of the unambiguous language of the Agreement shows it is not plausible that Mr. Cella had a justified expectation that he would not be fired until his one-quarter option vested. Given the clear language of the Agreement, and in accord with the rules announced in Vander Veur, it would be futile to allow Mr. Cella to allege his right to the option under the implied covenant of good faith and fair dealing. Accordingly, the court denies leave to allege that part of his proposed claim.

### 3. Payment of Commissions

Mr. Cella relies on industry custom to allege breach of the implied covenant underlying the Agreement for failure to pay the commissions. He alleges that

> [i]n the government contracting arena, industry custom dictates that an employee would be paid commissions on contracts in the late stages of negotiation and for which all of the substantive work is complete ("Late Stage Contracts"), even in the event that the employee is terminated prior to the official closing of the contract.

(Proposed 3d Am. Compl. ¶ 94.) He further alleges that "[i]t would be highly irregular to not pay an employee commissions on Late Stage Contracts in the event the employee was no longer employed at the time of the official closing of the contract." (Id. ¶ 95.) And he maintains that, "because of this well-established industry custom, the parties understood that Cella would be paid for his work on the Late Stage Contracts, even in the event he was no longer employed by MobiChord at the official closing of the contracts." (Id. ¶ 96.)

Given the alleged industry norms, he says MobiChord violated the covenant because MobiChord's refusal to pay the commissions was inconsistent "with the agreed common purpose" of the parties and his justified expectation that he would be paid for his work on those Late Stage Contracts. "To comply with his obligation to perform a contract in good faith, a party's actions must be consistent with the agreed common purpose and the justified expectations

13

of the other party." St. Benedict's Dev. Co. v. St. Benedict's Hosp., 811 P.2d 194, 200 (Utah 1991).

In its opposition, MobiChord contends that the express agreement would be undermined if the covenant required payment of commissions on sales that closed after Mr. Cella, an at-will employee, was fired. It also argues that Mr. Cella may not rely on industry custom to establish his alleged justified expectation.

    a. Parties' Course of Dealings vs. Industry Customs

MobiChord argues that industry custom may not be used to define obligations imposed by the covenant underlying the Agreement. It points to the following language in Vander Veur: "Under the covenant of good faith and fair dealing, we look to the 'parties' course of dealings or conduct' to determine a party's legal duty." 452 P.3d at 1179 (emphasis added) (quoting Oakwood Vill., 104 P.3d at 1240). According to MobiChord, because the opinion did not discuss industry customs, Mr. Cella may not rely on them to allege a breach of the covenant underlying an employment agreement.

But Vander Veur does not, on its face, foreclose reliance on industry customs. It simply does not address the issue MobiChord raises here.

Moreover, as Mr. Cella points out, the Utah Supreme Court, in Young Living Essential Oils, LC v. Marin, 266 P.3d 814 (Utah 2011), stated that industry custom or usage of trade can define the reach of the covenant. In that case, the court recognized that a party to a contract can "invoke the covenant of good faith and fair dealing … based on a universally accepted obligation established through industry custom **or** the parties' course of dealing." Id. at 817 (emphases added). It explained that "[w]here the court adopts a covenant enshrined in a settled custom or usage of trade, it is simply endorsing a universal standard that the parties would doubtless have

14

adopted if they had thought to address it by contract." Id. (emphasis added). Although the Young Living court rejected the plaintiff's reliance on the covenant based on the facts of that case,[3] its comment on industry custom is relevant here. Accordingly, the court will allow Mr. Cella to rely on industry custom to support his claim.

b. Express Terms of the Agreement

MobiChord next argues that "the express terms of the Employment Agreement eliminate as a matter of law any justified expectation for commissions … after Mr. Cella's employment ended." (Def.'s Opp'n to Pl.'s Mot. Am. at 5, ECF No. 55.) According to MobiChord, Mr. Cella is trying to override the at-will employment relationship clearly created by the Agreement and to alter the "express terms of Mr. Cella's employment agreement specifically address[ing] his entitlement to commissions[.]" (Id. at 3.) Again it cites Vander Veur.

MobiChord correctly points out that the Agreement, as in Vander Veur, "makes clear that [MobiChord] is able to 'terminate [Mr. Cella's] employment at any time and for any reason, with or without cause." (Id. at 4 (quoting Agreement at p. 2 § 4).) But in important respects, Vander Veur is factually distinguishable.

Language in Mr. Vander Veur's compensation agreement expressly prohibited the relief he requested. He sought commissions for sales of television services that were due and paid when installation was complete. That contract specifically defined a "Qualifying Sale" (i.e., one that generated a commission) as "a commissionable sale where the minimum margin requirements are met and the installation is complete." Vander Veur, 452 P.3d at 1176 (quoting

---

[3] See Young Living, 266 P.3d at 817 (noting that although industry custom is relevant to determining the parties' justified expectations under the covenant, the plaintiff did not point to a "universal industry custom or standard" and instead cited "oral representations" of the other party that directly contradicted the contract's written terms).

compensation agreement at issue). Because Mr. Vander Veur was terminated before installation occurred, the court held that an award of commissions under the covenant would have contradicted express language in the contract, which is an improper use of the covenant.

On the other hand, the language in Mr. Cella's Agreement is not so clear. And MobiChord's interpretation of language in the Agreement attempts to add express language to the compensation section to make it clearer.

According to MobiChord, "Mr. Cella's 'Compensation and Employee Benefits' are limited to 'full-time employee[s] of [MobiChord].'" (Def.'s Opp'n at 4 (quoting Agreement at p. 1, § 2).) But the sentence using the term "full-time employee of the company" simply says Mr. Cella was entitled, while he was employed, to standard employee benefits. And even if that phrase extended to the specific terms governing compensation, that does not foreclose payment of commissions from Late Stage Contracts that he alleges, based on industry custom, he earned while he was a full-time employee. Moreover, the fact that MobiChord had, and exercised, the right to terminate Mr. Cella at any time does not answer the question of whether termination of his employment also terminated MobiChord's alleged obligation to pay commissions on "Late Stage Contracts."

MobiChord also insists that the Agreement "states that Mr. Cella's right to a commission is triggered by 'eligible [subscription] invoices' of new customers or from existing customers, obviously being once a customer is under a 'closed' contract." (Id. at 4 (emphasis added).) At this point, the court cannot say, based on the language, that the interpretation is obvious. The

16

Agreement does not define "eligible invoices" or "subscription invoices."[4]  And the term "closed" is not used anywhere in that paragraph.

In other words, the Agreement is silent on the question of whether MobiChord owes commissions on the Late Stage Contracts that officially closed after Mr. Cella's employment ended.  Mr. Cella attempts to fill these gaps in the Agreement by alleging "well-established industry custom" through which "the parties understood that Cella would be paid for his work on the Late Stage Contracts, even in the event he was no longer employed by MobiChord at the official closing of the contracts."  (Proposed 3d Am. Compl. ¶ 96.)  Unlike the plaintiff in Vander Veur, Mr. Cella's alleged expectation does not contradict the express language of the Agreement, which only addresses how commissions are calculated, not when they are earned.

At this point, the court must assume the truth of Mr. Cella's allegations about Late Stage Contracts and construe them in a light most favorable to him.  Whether the factual record bears that out is not for the court to decide here.

## ORDER

For the foregoing reasons, Plaintiff Travis Cella's Motion to Amend (ECF No. 47) is GRANTED IN PART AND DENIED IN PART as follows: he has permission to file a claim for commissions under the implied covenant of good faith and fair dealing, but he does not have permission to add a claim for recovery of the one-quarter option under the covenant.  Mr. Cella is directed to file his Third Amended Complaint, adapted to comply with this court's ruling, as

---

[4] Although the meaning of those terms may be apparent to one working in the industry, the court is left with the sparse language of the contract and no context within which to interpret them.

17

soon as practicable.

      SO ORDERED this 31st day of July, 2020.

                BY THE COURT:

*Tena Campbell*

                TENA CAMPBELL
                U.S. District Court Judge